Charles M. Peisner v. Commissioner.
Peisner v. Commissioner
Docket No. 55185.
United States Tax Court
T.C. Memo 1957-115; 1957 Tax Ct. Memo LEXIS 133; 16 T.C.M. (CCH) 477; T.C.M. (RIA) 57115; June 28, 1957
*133 Petitioner made separate cash gifts in trust for his two children. On the same date he joined together with the trusts in partnership. Held: The parties to the partnership intended in good faith to join together with a business purpose in the present conduct of a business: Joseph J. Lyman, Esq., 1001 Connecticut Avenue, N.W., Washington, D.C., for the petitioner. Emil Sebetic, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies against petitioner Charles M. Peisner for the taxable years and in the amounts as follows: Calendar Year
Deficiency
1945
$47,333.52
1946
19,575.34
The sole issue in this case is whether the trustees of the separate trusts, established for petitioner's children by the petitioner, were valid partners with petitioner under the name of Artel Textile Company, during the taxable years 1945 and 1946. Respondent made other adjustments to the alleged partnership income and recomputed such income on the calendar year basis. Petitioner does not dispute the correctness of such adjustments in the event we hold that the partnership was invalid. *134 Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioner is an individual, residing in Great Neck, Long Island, New York. The returns for the taxable years involved herein were timely filed with the then collector of internal revenue for the third district of New York. Petitioner was, during 1945 and 1946 and is at the present time, married to Sadie F. Peisner, hereinafter referred to as Sadie. They have two children, Arthur B. Peisner, hereinafter referred to as Arthur, born on January 15, 1927, and Elaine I. Peisner, hereinafter referred to as Elaine, born on June 7, 1925. The petitioner has been engaged in the textile business since 1928. In 1938 he organized Starlight Fabrics, Inc., hereinafter referred to as Starlight, the common stock of which was issued to himself and his wife, Sadie, in the amount of 75 shares and 50 shares, respectively. At all times material herein, Starlight maintained its offices and facilities at 1412 Broadway, New York 18, New York. Starlight was and still is engaged in the business of converting rayons and bengalines. Until 1945, its operations consisted of purchasing unfinished woven goods from mills, *135 sending such goods out to be dyed and printed, then selling the finished goods to manufacturers, dealers and jobbers. At times orders for the finished goods were obtained before the unfinished goods to be used to fill the orders were purchased. Starlight employed about a half dozen employees. It had an established line of credit and sources of supply for unfinished goods. All of its sales were factored by the United Factoring Corporation, by which all of its accounts receivable were guaranteed, thus permitting it to draw amounts up to 85 per cent of its current orders from the factor to be used as current working capital. At all times material herein, petitioner was the president of Starlight. He controlled and managed its operations. He was personally responsible to a major degree for, and did, a substantial amount of its selling, and the majority of its business was the result of his personal efforts. During the early part of 1945, because of military requirements in textiles, material became scarce for Starlight's regular business. O.P.A. regulations seriously restricted Starlight's regular business. At about the same time a shortage developed in ribbon. Petitioner decided *136 that a substantial profit could be made by having the goods normally purchased and converted by Starlight, made into cut ribbon which was not subject to O.P.A. ceilings, and selling the ribbon to clothing manufacturers and ribbon dealers. Starlight could have carried on the ribbon operation without requiring any additional capital. The petitioner was aware that any increase in profits that Starlight might earn if it engaged in the ribbon operation in 1945 would be subject to excess profits taxes and this was one of the reasons why it was determined to set up a partnership. In early 1945, petitioner expressed a desire to make gifts to his two children and also to get them into the business. After conferences among petitioner, his accountant, Samuel Epstein, and his attorney, Morris A. Pomerantz, it was decided that cash gifts would be made in trust for each of the children. It was also suggested that a partnership agreement could be entered into between the petitioner and the two trusts for the ribbon operation. The accountant, Epstein, advised petitioner that a tax saving could be achieved by starting a new operation which would not be subject to excess profits taxes. The petitioner *137 was advised by his attorney, Pomerantz, of the legal consequences of setting up irrevocable trusts. Pomerantz also suggested that some one other than the petitioner should be appointed trustee for the children. It was then decided that Harry C. Gessler, hereinafter referred to as Gessler, a wealthy long-time friend of the family, and petitioner's wife Sadie would serve as trustees. Thereafter, on April 9, 1945, the documents setting up separate irrevocable trusts for Arthur and Elaine were drawn and executed. The trust agreements were in the common form of ordinary irrevocable trusts, permitting the trustees to make investments as they saw fit. The petitioner had no voice, right or control over the corpora of the trusts or any accumulations therefrom. The partnership agreement, among other things, provided that the parties would be associated together as partners in the business of manufacturing, supplying, and selling of ribbons. It also provided that the petitioner and the trusts would share equally in the profits and losses. For the most part, the agreement contained the ordinary provisions of a partnership agreement. Some of the provisions were not so ordinary. These provisions *138 retained for the petitioner the right to be in active charge of the management of the business, sole right to sign partnership checks, and the right and option at any time during the term of the partnership, to purchase the interest of either party, or both, upon giving 30 days' notice in writing. The agreement also provided that the capital of the partnership would be $6,000 and that each partner would contribute $2,000 toward it. The petitioner deposited $2,000 to the partnership account on April 13, 1945. The trustees endorsed petitioner's gift checks of $2,000 each to the partnership account on April 17, 1945. During the period of its existence from April 9, 1945, to May 31, 1946, the partnership operations consisted of purchasing all of its dyed and printed goods from Starlight, having such goods cut into ribbon, then selling such cut ribbon. The operation was conducted from the same address as Starlight, using the same facilities, and for the most part, the same employees. All partnership sales were factored, as was Starlight's, by the United Factoring Corporation. Because of his contacts and experience in textiles, petitioner was in a position to obtain a substantial number *139 of customers for ribbon, although customers were easily obtainable because of the great demand. The opportunity was present for quick turnover and, because of the factoring system, quick return of capital which could be used as working capital. During the period of its existence, substantial income was earned, reported, and distributed by the partnership, as follows: Reported
Income
4/9/45-
11/1/45-
Distributee
10/31/45
5/31/46
Charles M. Peisner Salary
($75.00 per week)
$ 2,175.00
$ 2,325.00
Distributive Income
18,350.06
25,617.15
Total
$20,525.06
$27,942.15
Trust for Arthur B. Peis-
ner
$18,350.05
$25,617.14
Trust for Elaine I. Peisner
18,350.05
25,617.14
Total Reported Income
$57,225.16
$79,176.43 The trustees maintained separate bank accounts for the two trusts into which each distributive share was deposited as distributed. Disbursements were made from each trust for income taxes of the trusts and also to purchase United States bonds. The terms of the partnership agreement were carried out in their entirety. None of the corpora of the trusts, and none of the income of the trusts, ever resulted to the petitioner, directly or *140 indirectly. The partnership books were audited and reports were made to the trustees as to the financial condition of the business. The partnership was dissolved on May 31, 1946, as the current excess profits tax provisions were discontinued and the ribbon operation was reorganized as a corporation under the name of Artel Textile Co., Inc., with each of the partners obtaining proportionate interests in the corporation. Artel Textile Co., Inc., was, in turn, dissolved in September of 1947 and the majority of the proceeds of the dissolution received by or on behalf of Arthur and Elaine were used by or for them to acquire preferred stock in Starlight. Arthur did some work for the partnership during the summer while on vacation from Textile school and is at present active in Starlight. Elaine's husband, Hal Winkler, worked as a salesman for the partnership and the successor corporation. The trustees were consulted informally concerning the partnership operation and the consequent reorganization as a corporation. The trustees filed United States and New York State fiduciary income tax returns on behalf of the respective trusts for the years 1945 and 1946 and paid the taxes due thereon. *141 The parties to the partnership intended, in good faith, to join together, with a business purpose, in the present conduct of an enterprise. Opinion The instant case presents for our determination the often litigated question of the validity of a family partnership. In this case, the question is whether the petitioner and the trustees of separate trusts for the benefit of his children were valid partners during the taxable years 1945 and 1946. The petitioner has the burden of establishing the validity of the partnership. . The question of whether a family partnership is valid for our purposes depends upon "whether the partners really and truly intended to join together for the purpose of carrying on the business * * *. And their intention in this respect is a question of fact, * * *." The Culbertson case also enumerated some of the many facts and circumstances to be considered in determining the intention of the parties, as follows: "The question is * * * whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their *142 statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" Let us examine some of the facts. The petitioner had been in the textile business for a number of years, doing business as Starlight Fabrics, Inc., a corporation. After O.P.A. regulations restricted the normal operations and profits of Starlight, petitioner recognized in early 1945 an opportunity for substantial profit in the processing and sale of ribbons, which was not under O.P.A. regulations. Also in early 1945, petitioner desired to make gifts to his two children, then 18 and 19 years of age. Upon the advice of counsel and an accountant, petitioner decided to make cash gifts in trust, and then join in partnership with the trusts in the operation of the ribbon operation. Petitioner was advised that it would be to his tax advantage to form a new business since added profits to the *143 corporation would be subject to excess profits taxes. The necessary trust and partnership documents were executed on the same day as a single plan and the ribbon operation was carried on under the name of the alleged partnership. The operation was carried on at the same address as Starlight, using the same facilities, and for the most part, the same employees. At the end of approximately a year's operations, May 31, 1946, the partnership was dissolved because the excess profits tax had been terminated. The operation was reorganized as a corporation under the name of Artel Textile Co., Inc., with each partner acquiring proportionate interests. This corporation was in turn dissolved in approximately a year and most of the proceeds of dissolution were used to purchase stock in Starlight. Of course, respondent contends that the facts and circumstances indicate that the petitioner merely devised a family scheme for tax avoidance by anticipatory assignment of income under the pretense of forming and conducting a partnership. Respondent's principal contentions are (1) that the terms of the partnership agreement gave him the rights to manage and control the business; (2) that the only *144 purpose for the partnership was to avoid excess profits taxes; (3) that neither the trustees nor the beneficiaries of the trusts contributed vital services to the partnership; and (4) that capital was not a necessary income-producting factor in the business. The petitioner, on the other hand, contends (1) that the trusts were irrevocable; (2) that the trustees were consulted at all times concerning the partnership agreement and the manner in which the business was operated; (3) that there were valid business purposes for the partnership; (4) that the trustees contributed necessary capital to the partnership; and (5) that the partnership agreement and trust agreements were strictly adhered to with each partner having the right to get and getting his or her proportionate share of the fruits of the business. The petitioner made complete and irrevocable gifts in trust for each of his two children and the respondent does not contend otherwise. The petitioner had no right nor did he attempt to exercise any control over the trusts as independent trustees were appointed. While the partnership agreement gave petitioner the right to manage the business, the trustees had the right to investigate *145 the business operation, and were furnished periodic reports on the business. Profits of the business were to be divided and were divided in proportion to the capital invested. And of course if there had been losses, they were to have been shared also. It appears that the respondent places greatest weight on his contention that this was a personal service business, therefore capital was not a necessary income-producing factor. We disagree. It is true that petitioner was personally responsible for most of the business of the partnership, but in order to get the business, he had to have a product to sell. In order to get this product, the partnership had to purchase, and keep an inventory of uncut fabrics, have them converted, and then sold. We fail to understand how capital can be unnecessary when it is necessary to maintain an inventory of purchased goods. True, the capital originally invested in the partnership was not large, but the point is the parties decided it was sufficient to begin the business considering the fact that their accounts would be factored and a fast turnover was expected. As was stated in the Culbertson case, "The question is not whether the services or capital *146 contributed by a partner are of sufficient importance to meet some objective standard * * *." The fact that there was a fast turnover of goods by which a constant flow of capital was available makes little difference. Immediately upon the purchase of goods, the partnership became liable for the payment of the purchase price thereof. The liability to pay for the goods would have remained if, for some reason, the partnership could not have converted and sold the cut fabrics. In such a case, there can be little doubt that each party to the partnership would have been liable. We agree that once started, a successfully operating business, such as in the instant case, has little need for accumulating capital because of the factoring method of raising operating capital commonly used in the textile business. This does not mean, however, that capital is not an important income-producing factor. Capital was required to begin operations in the first place. See . There can be little doubt that one of petitioner's purposes for forming a partnership was to avoid excess profits taxes. In , a *147 case factually similar in some respects to the instant one, there was a finding of fact that "His purpose in changing from a corporation to a partnership was to avoid excess profits taxes." We held that a valid partnership existed in that case. As in the Stern case, the petitioner's principal purpose in giving, in effect, a share of the business to his children was to induce them to participate in the textile business with him. Petitioner's hope was realized as Elaine's husband entered the business and Arthur is still in this business. It is not disputed that each partner received his or her proportionate share of the income from the business in accordance with the terms of the agreement and each partner's capital contribution. Concerning this fact, it was noted in , "Whether he is free to, and does, enjoy the fruits of the partnership is strongly indicative of the reality of his participation in the enterprise." After considering the complete record in this case, we feel that the instant case comes within our holdings in ; , affd. ; *148 and , affd. . We therefore hold that the parties to the partnership agreement in the instant case intended in good faith to join together, with a business purpose, in the present conduct of a business. Decision will be entered under Rule 50.